1   Daniel A. Bernath, California Bar 116636
2   ussyorktowncys10@yahoo.com
3   Mailing: 10335 sw Hoodview Drive
4   Tigard OR 97224
5   503 367 4204

6

7   Attorney for Plaintiffs and those similarly situated

8

9

10              UNITED STATES DISTRICT COURT
11              CENTRAL DISTRICT OF CALIFORNIA

12

13   Lily Jeung, Amy Sayers, and Darrch ) No CV 14 - 06223 FMO(ASx)
14   Walchesky, on behalf of themselves )
15   and all others similarly situated    ) Complaint for Wages
16                                          ) Common Counts
17                                          ) (1) Violations of Fair Labor
18                                          ) Standards Act;
19   Plaintiffs,                            ) (2) Quantum Meruit
20                                          ) (3) Unjust Enrichment
21
22   vs.                                    )
23                                          ) JURY TRIAL DEMANDED
24   Yelp, Inc.                             )
25                                          )
26   Defendant.                             )

27   1. This is an action by plaintiffs to be compensated in wages for labors expended for defendant

28   Yelp, Inc., pursuant to federal law and common counts. Yelp, Inc. pays some of its workers for

29   the exact same work that plaintiffs and those of his collective perform. But Yelp, Inc., through

30   various schemes and subterfuges has denied plaintiffs their wages. Defendant Yelp, Inc. owns

31   and operates websites that feature information about businesses that include ratings, reviews,

32   photos, etc. Yelp, Inc.'s website averages 138 million visitors per month and users have posted

33   over 61 million reviews on behalf of Yelp, Inc.

**COLLECTIVE-ACTION COMPLAINT FOR WAGES**
**Jeung et al. vs. Yelp, Inc.**

2. Many reviews on Yelp.com are created by wage paid writers. But, a large number of the ratings, reviews, and photos posted on Defendant Yelp's websites are created and supplied by a large class of non-wage-paid writers who perform the exact same work.

3. This collective is easy to ascertain as plaintiffs and all collective members have records of the labors they have performed for Yelp, Inc. and Yelp, Inc. also has records of all the labors done at the demands of employer Yelp, Inc. and provided by members of this collective.

4. This lawsuit seeks to recover unpaid compensation for Plaintiffs and other similarly situated workers. This is a lawsuit merely to provide the wages to all writers of Yelp and not just the ones which Yelp, Inc. chooses to pay in wages.

5. Defendant Yelp, Inc. is an American online media company and weblog network, based in San Francisco, California. Commentators attribute Defendant's income to its low operating costs, which is in large part attributable to the non-wage paid labor of its workers.

6. Defendant, by virtue of its management and control over the nature of the compensation for labor and wages and work of its employees, is an employer under applicable labor law and legal analysis.

7. The control of Yelp, Inc. over plaintiffs reaches even life or death decisions by Yelp, Inc. One member of the collective became so intoxicated with alcohol at

1  a Yelp, Inc. meeting that she could not drive herself home and her identification

2  (even to see if she was of legal age) could not be found.  Rather than contact

3  medical personnel for this life threatening condition, Yelp, Inc. detained this as

4  yet unnamed plaintiff until she could become conscious from her coma to

5  mumble her address to permit her to be driven home by Yelp, Inc.

6  8. Yelp earns its income by selling advertising on its site, the content of which is

7  created by the non wage paid writers, in violation of the Federal Labor Standard

8  Act ("FLSA").

9  *9.* This is a collective-action complaint under the FLSA based on Defendant's

10  policies and practices of failing to pay wages to its workers by designating them

11  variously as "reviewers", "Yelpers", "independent contractors", "interns" ,

12  "volunteers" or "contributors" even though they are performing vital work that

13  inures to the benefit of Yelp's various business enterprises.

14  *10.*Defendant could not exist, nor make its returns, without labors of and its control

15  over unpaid writers. One of Defendant's co-founders stated: "The site wasn't set

16  up to serve businesses, it was meant to serve the consumer. ***Without the***

17  ***community of reviewers, there is no Yelp.***"

18  11. Commentators have compared said business practices to a 21st Century

19  galley slave ship with pirates banging the drum to keep up the fast pace and to fill

20  the pockets of their stockholders with treasure. . . and with "overhead that would

**COLLECTIVE-ACTION COMPLAINT FOR WAGES**
**Jeung et al. vs. Yelp, Inc.**         3

1    shame an antebellum plantation."

2    "Yelp's business model profits off the unpaid work of reviewers".

3    12. The practice of classifying employees as "reviewers" , "Yelpers",

4    "independent contractors" , "interns" , "volunteers" or "contributors" to avoid

5    paying wages is prohibited by federal law, which requires employers to pay all

6    workers who provide material benefit to their employer, at least the minimum

7    wage.

8    13.Defendant, by virtue of its management and control over the nature of the

9    wages and compensations and work of its writers and other factors, is an

10   employer of the instant plaintiffs and the collective plaintiffs under applicable

11   labor law and legal analysis.

12   14. Additionally, Defendant, has been, and continues to be, unjustly enriched by

13   the unpaid labors provided by these plaintiffs and all those similarly situated.

14   Unjust enrichment is based upon society's interest in preventing the injustice of

15   a person's retaining a benefit for which no payment has been made to the

16   provider.

17   15.The named plaintiffs, and persons similarly situated, are persons who each

18   worked a substantial number of hours for Defendant over a number of years,

19   and were not paid wages for their work. The work they performed -- writing,

**COLLECTIVE-ACTION COMPLAINT FOR WAGES**
**Jeung et al. vs. Yelp, Inc.**                                    4

1    researching, editing, lodging reviews, upgrading prior reviews , and generally

2    promoting the site -- is central to Defendant's business model as a publisher.

3    16. Defendant employs tens of thousands of other "reviewers" in the same way,

4    paying them nothing or underpaying them and utilizing their services to publish

5    its content on the internet.

6    17.By this action Plaintiffs seek to have Defendant follow the law and compensate

7    its workers for the necessary services that they render to Defendant.

8                              **JURISDICTION AND VENUE**

9    18. This Court has original jurisdiction over this case pursuant to 28 U.S.C. §§

10   1331, 1332, and 1367, because the action involves a federal statute, the FLSA,

11   29 U.S.C § 216.

12   19. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)(2), because a

13   substantial part of the events giving rise to the claims asserted herein occurred

14   in this judicial district; 28 U.S.C. § 1391 (c)(2), and (d).

15                                    **PARTIES**

16   20. Plaintiff **AMY SAYERS** is an individual domiciled in Portland, OR. She was

17   hired by Yelp, Inc. as a writer and she fulfilled that job description and job

18   functions. Sayers, who has written over 500 reviews for defendants since 2006;

19   has been awarded the prestigious "First To Review" and for the previous 5

20   years has been designated by Yelp as an model reviewer. and "Review Of The

**COLLECTIVE-ACTION COMPLAINT FOR WAGES**
**Jeung et al. vs. Yelp, Inc.**                                              5

1     Day" honors; and been designated an model reviewer by Defendants. Yelp

2     defines this status as "a designation awarded writers who supply superior

3     intellectual, social, and/or economic status and are deemed the best or most

4     skilled writers"

5     21. Ms. Sayers was often directed to write more reviews if in Defendant's opinion

6     her production seemed to slack off. Plaintiff was also directed how to write

7     reviews and was given other such employee type direction from employer

8     defendant. Yelp, Inc. through these methods and others supervised and

9     controlled plaintiff's work schedule and conditions.

10    22. Ms. Sayers was fired from her position with no warning, a flimsy explanation,

11    no unemployment or workers compensation benefits, no tax withholding for

12    either state or federal entities and no opportunity for recourse or due process

13    rights as an employee. Her awards she had attained were taken away; and her

14    reviews were removed from the website, and she has been refused access to her

15    own writings.

16    23. Sayers, and all plaintiffs, listed or those within the collective, all contributed to

17    defendants' income in advertising by providing content for the Yelp.com

18    audience to read (and as with all plaintiffs) said audience views were sold to

19    advertisers.

**COLLECTIVE-ACTION COMPLAINT FOR WAGES**
**Jeung et al. vs. Yelp, Inc.**                                          6

1   24. Plaintiff, **LILY JEUNG** is an individual domiciled in Los Angeles, CA. She

2   was hired by Yelp, Inc. as a writer and she fulfilled that job description and job

3   functions and has written approximately 1,100 reviews for Defendants; until

4   recently had 5,000 "followers" (which is the maximum amount possible), with a

5   "waiting list" of at least 100 individuals in line to become her "followers"; been

6   awarded the prestigious "First To Review" and "Review Of The Day" honors;

7   25.Ms. Jeung was often directed to write more reviews if in Yelp's opinion her

8   production seemed to slack off. Plaintiff was also directed how to write reviews

9   and was given other such employee type direction from employer defendant.

10  Yelp, Inc. through these methods and others supervised and controlled

11  plaintiff's work schedule and conditions.

12  26. Ms. Jeung was fired from her position with no warning, a flimsy explanation,

13  and no opportunity for recourse or appeal rights. Her awards she had attained

14  were taken away; and her reviews were removed from the website, and she has

15  been refused access to her own writings. She also has been denied

16  unemployment, workers compensation, tax contributions by her employer Yelp,

17  Inc. to state and federal entities.

18  27. Plaintiff, **DARREN WALCHESKY** is an individual domiciled in Pittsburgh

19  PA. He was hired by Yelp, Inc. as a writer and she fulfilled that job description

20  and job functions and who has written over 1,200 reviews, as well as 238

**COLLECTIVE-ACTION COMPLAINT FOR WAGES**
**Jeung et al. vs. Yelp, Inc.**                                              7

1  follow-up and updated reviews for Defendants. His writings have garnered

2  13,536 "Useful" votes, 10,469 "Funny" votes, and 11,854 "Cool" votes from

3  Defendant's audience of writers and readers. Mr. Walchesky has received 611

4  "First to Review" awards from Yelp; has taken and submitted 2,122

5  photographs which have been published at Defendant's discretion.

6  28. WALCHESKY was often directed to write more reviews if in Yelp's opinion

7  his production seemed to slack off. Plaintiff was also directed how to write

8  reviews and was given other such employee type direction from employer

9  defendant. Yelp, Inc. through these methods and others supervised and

10  controlled plaintiff's work schedule and conditions.

11  29. Additionally, Mr. Walchesky hosted at least one social and instructional event

12  for fellow Yelp writers at the behest of Defendant .

13  30. The defendant, YELP, INC., is a corporate entity which appears to be duly

14  formed and incorporated pursuant to the laws of the State of Delaware and with

15  its principal place of business in San Francisco, California. Yelp operates the

16  website *yelp.com*, as well as various others.

17  31. Defendant has the power to set wages and wage policies for its employees,

18  which in conjunction with its detailed policies and procedures Defendant

19  controls the behavior of its workers and the placement and content of the their

20  work product.

**COLLECTIVE-ACTION COMPLAINT FOR WAGES**
**Jeung et al. vs. Yelp, Inc.**                                                8

1  32. Indeed, Yelp, Inc. Vice President Eric Singley has declared the instructions on

2  this direction and control of all its writers (including the paid writers of Yelp,

3  Inc.) and including plaintiffs and the proposed collective herein:

4  The worst-case scenario for writing a review on mobile was

5  "Good fries, five stars." That was failure for us.

6  **This is Yelp's bread and butter**, this is what we do better than

7  anybody else:  We've learned how to make that work well on

8  the web. There are concepts there that we could re-use.

9  One is **modeling or mirroring**--you show [writers] the kind of

10  content that you want them to write before they write it. **They**

11  **have an idea for what the goal is**.

12  For example, on Yelp.com, you see the highlighted review of

13  the day, front and center on the site. We reward our best

14  contributors, and **this hand-selected group ... Yelpers** get a

15  stamp on their profile that says they create the best content.

16  Other people see these badges and **they get an idea of the type**

17  **of content they should be writing** to achieve that kind of

18  status.

19  When [the Yelp writer] tap to write a review on mobile, there's

20  a brief moment where we show [the Yelp writer] a recently

**COLLECTIVE-ACTION COMPLAINT FOR WAGES**
**Jeung et al. vs. Yelp, Inc.**                                              9

1            written review that's of good quality. You see that for a

2            moment, and then the keyboard pops up, and then you can start

3            writing. When you start writing, **you get that last flash of**

4            **content we'd like you to write.**

5            During the writing process we do something else. … if you did

6            that "good fries" review and stopped, you will get a gently

7            **admonishing line** at the bottom that says "This review is

8            shorter·than most." We're very careful to not make that message

9            feel intrusive or overly admonishing; it should just be a **nudge**

10           **in the right direction."**

11    33.Defendant is a covered employer within the meaning of the FLSA. At all

12    relevant times. Defendant is legally responsible for the violations of the FLSA

13    committed by Defendant and alleged in this Complaint.

14    34.Plaintiffs bring this action as a collective action for wages not paid under the

15    protection of the Fair Labor Standards Act (FLSA) on behalf of themselves and

16    all others similarly situated for the purpose of asserting the claims alleged in

17    this Complaint on a common basis.

18    35.Plaintiffs in all claims, pursuant to the FLSA, 29 U.S.C. § 216, on behalf of

19    themselves and all similarly situated persons, were employees of Defendant,

20    and were not paid wages for their work published on Defendant's website; each

**COLLECTIVE-ACTION COMPLAINT FOR WAGES**
**Jeung et al. vs. Yelp, Inc.**                              10

1  performed duties relating to the creation and promotion of content on behalf of

2  Defendant, including but not limited to writing, researching, editing, lodging

3  reviews, upgrading prior reviews , and generally promoting the site, during the

4  period between four years prior to the filing of this Complaint and until the date

5  of final adjudication of this action (the "FLSA Class"). Other workers of Yelp,

6  Inc. did the exact same labors for Yelp, Inc., but were paid wages.

7  36. Collective action treatment will allow those similarly situated persons to

8  litigate their claims in the manner that is most efficient and economical for the

9  parties and the judicial system.

10  37. Some Plaintiffs of the collective action wrote reviews for Defendant regularly,

11  while others wrote intermittently.

12  38. As defendant repeatedly admits, Plaintiffs were an indispensable and integral

13  part of the success of the Defendant's business. Defendant's business model is

14  dependent on the plaintiff writers.

15  39. The totality of the circumstances surrounding Plaintiffs' employment

16  relationship with Defendant indicates economic and other dependence.

17  40. The exact size of the Collective or the identities of all members of the

18  Collective can readily be obtained during discovery. Plaintiffs believe that the

19  collective includes thousands of persons who are widely geographically

**COLLECTIVE-ACTION COMPLAINT FOR WAGES**
**Jeung et al. vs. Yelp, Inc.**                                                11

1    disbursed. Thus, the proposed Collective is so numerous that a non-FLSA

2    collection action joinder of all members is impracticable.

3    41. The claims of all members of the Collective involve common questions of law

4    and fact.

5    42. Plaintiffs' claims are typical of the claims of all other members of the

6    Collective, and Plaintiffs' interests do not conflict with the interests of any other

7    member of the Collective, in that Plaintiffs and the other members of the Class

8    were subjected to the same unlawful conduct.

9    43. Plaintiffs are committed to the vigorous prosecution of this action and have

10   retained competent legal counsel experienced and knowledgeable in labor law.

11   44. Plaintiffs are adequate representatives of the Collective and, together with its

12   attorneys, are able to and will fairly and adequately protect the interests of the

13   Collective and its members.

14   45. A collective action for wages is superior to other available methods for the fair,

15   just, and efficient adjudication of the claims asserted herein. Joinder of all

16   members of the Class in a non-FLSA action is impracticable and, for financial

17   and other reasons, it would be impractical for individual members of the Class

18   to pursue separate claims.

1    46. Moreover, the prosecution of separate actions by individual members of the

2    Collective would create the risk of varying and inconsistent adjudications, and

3    would unduly burden the courts.

4                **FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

5    47. These allegations apply equally to Class Members who are currently employed

6    by Defendants but are not receiving wages.

7    **A. Defendant Exploits a Vulnerable and Disposable Class of Workers**

8    48. Defendant's business model is predicated entirely on the exploitation of

9    Plaintiffs' labors in order for the company and its owners to receive income

10   approximately $360 million annually. Its success is dependent upon the efforts

11   of non-wage-paid reviewers/writers and its ability to use those reviews as a

12   draw to gain an audience on www.Yelp.com which defendant Yelp, Inc. then

13   uses as to obtain money from advertisers.

14   49. Defendant describes its model writers as a way of "recognizing and rewarding

15   Yelpers who are active evangelists and role models, both on and off the site".

16   50. Defendant's growth and preeminence as a publisher are directly attributable

17   to its low operating costs, made possible by not paying wages to an entire class

18   of workers and thereby also sidestepping payment of taxes, and other societal

19   contributions.

**COLLECTIVE-ACTION COMPLAINT FOR WAGES**
**Jeung et al. vs. Yelp, Inc.**                                                    13

1  51. By evading its responsibilities to pay its workers, Defendant is showing its

2  defiance at both at their workers, the taxing authorities of all states and the U.S.

3  Government and the American People who support its governments and its

4  programs for Unemployment, FICA, Workers Compensation, etc.

5  52. In its unethical and illegal scheme to exploit free labor, Yelp, Inc. has devised a

6  system of rewards and disciplines to motivate its non-wage paid writers to labor

7  without wages or expense reimbursement in the identical labor as it wage paid

8  writers, in violation of equitable principles and the FSLA.

9  53. Awards and public recognition are dispensed, instead of FLSA required wages,

10  for such activities as being the first to review a new business; frequently

11  checking in with specific businesses; and for writing a certain number of

12  reviews within a given time-frame. These motivational awards are offered by

13  Defendant to its writers instead of just compensation in the form of wages.

14  54. Yelp's meetings, notorious for gluttony and alcohol intake excess, for its writers

15  and wage paid and non-wage paid employees, comprised of selected invitees

16  based on the quality and quantity of their reviews, and help Yelp, Inc. continue

17  to push workers to compete for honors and further its direction and control of

18  the aggrieved laborers through Yelp, Inc.'s various motivational methods.

19  55.   Other motivations besides bestowing prolific reviewers with the title as

20  model writers, dubbing of individuals with such titles as "Duke or Duchess";

1   then Baron or Baroness (the ones with 2 the most dukedoms in their

2   neighborhood); and finally crowning their active participants "King" or

3   "Queen", the person with the most Dukedoms in a given city. These titles are

4   used to generate and maintain interest and productivity of its writers in lieu of

5   monetary compensation, as required by the FLSA.

6   56. Additional motivational awards offered by Yelp to its workers, including

7   "Review of the Day"; "Review of the Week", "Review of the Month", "Look

8   Who's Mouthing Off", and "Reviews We Like", are routinely used instead of

9   payment of just compensation in the form of wages as required by the FLSA

10   and equitable principles. These awards are treated as valuable commodities

11   within the Yelp community, and by utilizing an award and-punishment form of

12   barter, Yelp is trying to avoid its responsibility to pay its workers a fair wage or

13   any wage, and to contribute its share of employment taxes, workers

14   compensation and unemployment tax and the like.

15   **"Right to Control" Test**

16   57. To determine an entity's relationship to its workers is the employer's right to

17   control. The critical question in determining direction and control under this test

18   is not the *actual* exercise of control or the *degree* of control by the employer,

19   but whether **the *right of* control exists**.

**COLLECTIVE-ACTION COMPLAINT FOR WAGES**
**Jeung et al. vs. Yelp, Inc.**                                                     15

1   58. Yelp urges its non-wage-paid writers to increase the volume of their production

2   with such challenges as "100 Reviews in 100 Days", their pay being liquor,

3   food, badges, trinkets, and titles. Additionally, Yelp promoters instruct the non-

4   paid writers where to post their work product.

5   59. When writers fail to follow Yelp's demands, they are corrected and counseled

6   to move their work to a directed location.

7   60. While these and thousands of other similarly-situated plaintiffs worked for

8   liquor, food, badges, trinkets, and titles, certain other writers within the

9   company have been paid in wages; these include but are not limited to the

10  200,000 reviewers that Defendant admitted to in its SEC filing; the paid-with-

11  wages "scouts" who open up new geographic areas for the company; paid with

12  wages-"Community Managers" in each of the cities in which Yelp operates;

13  and traditionally-salaried employees of Yelp, including the CEO, who has

14  written more than 1,400 reviews on the site.

15  61. Another key factor in determining an employer's right to control is its ability to

16  fire its workers. Defendant has, and exercises, the right to fire any worker at any

17  time, with or without cause, with or without warning, with or without

18  explanation or offering any recourse or formal appeal rights.

19  62. Not only does Yelp, Inc. have the *right to control* its non-wage paid writers, it

20  has *exercised its total control* by terminating its writers who do not follow

**COLLECTIVE-ACTION COMPLAINT FOR WAGES**
**Jeung et al. vs. Yelp, Inc.**                                          16

1   Yelp, Inc.'s directions. At least two named Plaintiffs, and numerous other

2   similarly situated persons, *were* actually fired by Defendant; their badges and

3   licenses were revoked; their status and reputation sanctimoniously stripped

4   away; and their extensive work product deleted from the system with no

5   recourse or ability to recover it.

6   63. One plaintiff stated: " I left a negative review on Yelp regarding one of their

7   advertisers. Not only was my review removed, but I also received an e-mail

8   cancelling my Yelp account and stating that I could no longer write reviews or

9   get access to any that I had written. I was fired by Yelp for supposedly breaking

10  one of their rules, which I didn't".

11  64. By imposing strict guidelines and policies on its reviewers and firing the non-

12  wage paid workers, Defendant exercises full control over the quality, tone,

13  content, quantity, placement, and it's star-rating system.

14  65. To further direct and control all plaintiffs, defendants will manipulate what the

15  laborer sees when visiting www.yelp.com A writer will believe that its work is

16  being broadcast and published to the world wide web's audience because the

17  laborers' reviews will be viewed on the writers computer or devise. But Yelp,

18  Inc., manipulates the viewing, to motive and get more labor from a plaintiff by

19  letting only her computer view her work while other computers will not see her

20  writing. If plaintiffs knew that their work was not being viewed by others, then

1    plaintiff would likely not provide labors for defendant and thus defendant

2    controls plaintiffs who are non-conforming with Yelp rules.

3    66. These Plaintiffs, and other similarly situated persons, *did* actually work under

4    the close scrutiny and prodding of Defendant and had to closely adhere to

5    Defendant's contracts, content guidelines and other policy statements.

6    67. Additionally, writers and their work-product are used as tools in Defendant's

7    transparent and business-unethical strategy of utilizing the reviews as

8    ammunition to punish some businesses and reward others. Defendant controls

9    the content of its websites by unilaterally determining what kind of reviews it

10   will use, and what kind it will delete and/or make impossible or nearly so to

11   view by the buying public.

12   68. Defendant controls its writers in the form of **Yelp, Inc. directives**: An model

13   writer of long duration revealed that Defendant directly and through its

14   "Community Managers" controls the writers with rules and standards, often by

15   deleting "non-conforming" work, by hiding non-conforming work but fooling

16   the writer into thinking that it is being broadcast, by chastising its non-wage

17   paid writers and wage paid workers for failing to follow Yelp rules and

18   dispensing these so-called "guidelines" in form of directives.

19   69. In directives to his non-wage paid worker plaintiff, the Yelp CEO Jeremy

20   Stoppelman refers to **"the measuring stick"** and warns "there will be **serious**

**COLLECTIVE-ACTION COMPLAINT FOR WAGES**
**Jeung et al. vs. Yelp, Inc.**                                        18

1     **penalties to those that ignore us.** . . The measuring stick is do you have

2     enough independence to be able to criticize the business? If the person is a

3     friend or you can't imagine a scenario where you could give them anything less

4     than a 5 star review you're likely biased and shouldn't review the business. (You

5     should not) **definitely not review** any of your business networking contacts

6     made through Ladies who Launch or the eWomenNetwork."

7     70.Defendant cajoles its troops: "By accepting this invitation, you'll be one of the

8     voices and faces of Yelp ...-- in essence **our ambassadors both on and offline**

9     - so all we ask is that you commit to keep "yelping" about your favorite

10    restaurants and clubs, your doctor, your mechanic, your hair salon, or really

11    anything that's local and would help others to know about! We want you to

12    keep telling your friends about Yelp and encourage them to invite their friends

13    as well (the more people yelping, the more useful and fun the site becomes).

14    We also ask that you contribute positively to the site and do your part to set an

15    example of what a stellar yelper can and should be."

16    71.Plaintiffs report they **must write glowing reviews of the venues that sponsor**

17    **company events,** where they are often offered free food, liquor, and use of the

18    premises, under threat of losing their exalted status.

19    72.Defendant controls its reviews to pander to its advertisers. For instance,

20    Defendant informed one of its writers that it was removing her reviews because

1    it was based on her personal experience. It then told another writer that it was

2    removing his reviews because they were NOT based on his personal

3    experience. This odd conduct by Defendant is used to placate advertisers who

4    might get upset by negative reviews, and then threaten to cancel their

5    advertising and demonstrates defendant's direction and control of all plaintiffs.

6    73.One writer said: "I loved Yelp until I got an email from them saying they have

7    taken off my photos due to the pictures being my 'personal experience' and that

8    the reason behind taking off my photos is because it does not 'portray the

9    business as a whole.' Well excuse me for showing other victims where their

10   $100 a night stay is worth. I'm sorry I was honest. Would it be better if I lied?"

11   74.Another reviewer admits that her two-star review (in which she says the

12   restaurant "sucks") wasn't really because it rated two stars instead of 4 or 5 stars

13   in truth , she thinks the proprietors have "a great thing going" – but because in

14   order **to keep her exalted status, she must write reviews with every level of**

15   **Yelp ratings, including one-and two-star ratings**. This directly conflicts with

16   Yelp's assurance to the SEC that it doesn't tell its reviewers how to rate

17   businesses, as well as lends credence to the countless business owners who

18   insist that Yelp manipulates the review system and demonstrates direction and

19   control of plaintiffs.

**COLLECTIVE-ACTION COMPLAINT FOR WAGES**
**Jeung et al. vs. Yelp, Inc.**                                            20

1  75.Defendant has admitted that it controls the content and placement of its reviews

2     for the benefit of its business model:

3        "If we fail to filter or remove a significant amount of content that is

4        biased, unreliable, or otherwise unhelpful, or if we mistakenly filter

5        or remove a significant amount of valuable content, our reputation

6        and brand may be harmed, users may stop using our products and our

7        business and results of operations could be adversely affected.

8        **Our success depends on the quality of the reviews, photos and other**

9        **content that we show on our platform,** including whether they are

10       helpful, up-to-date, unbiased, relevant, unique and reliable. If users

11       do not value the content on our platform, they may stop or reduce the

12       use of our products, and traffic to our website and on our mobile app

13       will decline. If our user traffic declines, our advertisers may stop or

14       reduce the amount of advertising on our platform.

15       As a result, **our business could be negatively affected if we fail to**

16       **obtain high quality content from our contributors**, or if the content we

17       display is perceived to be unhelpful, out-of-date, biased, irrelevant,

18       not unique or unreliable.

19       We must therefore ensure that our products and features are attractive

20       to users, and encourage them to contribute. In addition, users who

1    contribute content to our platform may provide content to our

2    competitors or subsequently remove their content from our platform.

3    If they do so, the value of our content may decline relative to other

4    available products and services, and our business may be harmed."

5    **"Relative Nature Of the Business" Test**

6    76. A secondary test to determine an entity's relationship to its workers is the

7    **"relative nature of the business"** test, the components of which include

8    determining whether the principal retains pervasive control over the operation

9    as a whole, and whether the worker's duties are an integral part of the

10   operation.  Said another way; **Yelp would not exist if not for the work done**

11   **by its non-wage paid workers.**

12   77. Defendant retains pervasive control over the operation and content of its

13   website in performing vital work that inures to the benefit of Yelp's various

14   business enterprises. Defendant repeatedly admits that it could not exist, nor

15   make its returns, without its domination and control and free labor over and

16   from the within stated unpaid writers.

17   78. Plaintiffs' duties are an integral part of Defendants' operation. One of Yelp's

18   co-founders stated:

19   "The site wasn't set up to serve businesses, it was meant to serve the

20   consumer. **Without the community of reviewers, there is no Yelp."**

**COLLECTIVE-ACTION COMPLAINT FOR WAGES**
**Jeung et al. vs. Yelp, Inc.**                                              22

1  79.Defendant disseminated a public notice: "We love interns at Yelp! And since

2  we are such a small, agile team, we can take on interns around the clock. If you

3  are looking to gain experience at a cool start-up and do real work, then this is

4  the place. Join us as an intern and have a real impact on our mobile apps,

5  yelp.com or our services for business owners."

6  80.Defendant has paid some writers wages to write reviews for its websites, while

7  a vast majority of its reviewers are not paid in wages but are paid with liquor,

8  food, badges, trinkets, and titles. This discretionary method of paying some

9  employees wages, but not others, is in violation of the FLSA.

10  81.One writer, who had been an advocate, promoter, educator, and regular

11  contributor with numerous followers, stated that "Back in 2007, **Yelp actually**

12  **paid people wages** in Pittsburgh to write reviews to get the ball rolling. Silly

13  me, I was doing it for free (i.e. non-FLSA-required wages)."

14                              **IMPACT OF VIOLATIONS**

15  82.The misclassification of employees as something other than employees, to

16  avoid defendants' obligation to pay wages, whether they go by such monikers

17  as volunteers, independent contractors, interns, contributors, free-lance writers,

18  reviewers, exalted employment status or Yelpers, presents a serious problem for

19  affected employees, employers, and to the entire economy. Misclassified

20  employees are often denied access to critical benefits and protections – such as,

**COLLECTIVE-ACTION COMPLAINT FOR WAGES**
**Jeung et al. vs. Yelp, Inc.**                                    23

1     minimum wage, overtime, health insurance, retirement benefits and

2     unemployment insurance – to which they are entitled. Employee

3     misclassification also generates substantial losses to the Treasury and the Social

4     Security and Medicare funds, as well as to state unemployment insurance and

5     workers compensation funds. Furthermore, tax payers pay more because Yelp,

6     Inc. does not pay its true costs of doing business as ethical businesses do

7     causing other taxpayers to make up the difference caused by Yelp, Inc.s'

8     misconduct and citizen malfeasances.

9     83. A 1994 study by Coopers and Lybrand estimated the federal government lost

10    $3.3 billion in revenues in 1996 due to schemes such as that outlined regarding

11    Yelp in the instant complaint, and $34.7 billion in the period from 1996 to

12    2004. Due to inflation, the figure of stolen tax money by employers such as

13    Yelp, Inc., reaches approximately S5 billion annually.  Nearly 60 percent of

14    lost revenue was attributable to the misclassified individuals failing to pay

15    income taxes on compensation.  The remaining losses stemmed from the failure

16    of employers and misclassified workers to pay taxes for Social Security and

17    Medicare and the failure of employers to pay federal unemployment taxes.

18    84.Defendant must comply with Federal labor laws; as Yelp, Inc. cannot rely on

19    non-wage paid laborers, to perform work that is the core of its business, and

20    that they have a responsibility to obey the law. Further, Defendant's use of non-

1   wage-paid employees gives it an unfair business advantage over its competitors.

2   (Unethical businesses such as Yelp, Inc. which does not pay all of its workers

3   wages has an unfair business advantage against a law abiding and ethical

4   business that incurs appropriate expenses by paying wages to all workers as

5   well as taxes to appropriate agencies and governmental bodies.)

6                           **FIRST CAUSE OF ACTION**

7                     **ON BEHALF OF NAMED PLAINTIFFS,**

8            **AND ALL OTHER PERSONS SIMILARLY SITUATED:**

9             **VIOLATIONS OF THE *FAIR LABOR STANDARDS ACT***

10  85.Plaintiffs incorporate by reference the allegations of each and every one

11  of the preceding paragraphs as though fully set forth herein.

12  86. Defendant failed to pay these plaintiffs or any similarly-situated worker any

13  compensation for the work and labor they performed for Defendant as

14  employees of Defendant.

15  87. These Plaintiffs and all other similarly-situated workers are owed unpaid wages

16  from Defendants pursuant to 29 U.S.C. §§ 206, 207, and any other applicable

17  statute or rule, in an amount which will be determined upon a review of

18  Defendant's records and/or upon proof at the trial on this action.

19  88. The number of persons similarly situated to the individual plaintiffs, and the

20  names of such persons, is unknown, but such persons, upon information and

1  belief, number in the tens of-thousands, and such persons, who will be

2  identified once discovery is had in this case upon the review of Defendant's

3  records and upon such identification will be offered to "opt-in" to join with this

4  action, are owed unpaid minimum wages from the defendants pursuant to 29

5  U.S.C. §§ 206, 207 and other applicable statutes in an amount which will be

6  determined upon a review of the defendants' records and/or at the trial of this

7  action.

8  89. Defendants' violations of the FLSA were willful.

9  90. As a result of the foregoing, the individual plaintiffs seek judgment against the

10  defendants on their own behalf and on behalf of those similarly situated who file

11  written consents to joinder in this action for all unpaid minimum wages owed by

12  the defendants to the plaintiffs and such other persons similarly situated pursuant

13  to 29 U.S.C. §§ 206, 207, together with an award of an additional equal amount as

14  liquidated damages, and costs, interest, and attorney's fees, as provided for under

15  29 U.S.C. § 216(b).

16                       **SECOND CAUSE OF ACTION**

17                    **ON BEHALF OF NAMED PLAINTIFFS,**

18           **AND ALL OTHER PERSONS SIMILARLY SITUATED**

19                    **PURSUANT TO *QUANTUM MERUIT***

**COLLECTIVE-ACTION COMPLAINT FOR WAGES**
**Jeung et al. vs. Yelp, Inc.**                                    26

1    91. Plaintiffs incorporate by reference the relevant allegations of each and every

2    paragraph numbers 1-84 inclusive as though fully set forth herein.

3    92. Plaintiffs wrote, researched, edited, lodged reviews, upgraded prior reviews ,

4    and generally promoted Defendant's website based upon Yelp's inducement of

5    trinkets, social status, liquor, food and other non-wage compensation.

6    93. Defendant utilized Plaintiffs' services to publish their content on the internet,

7    an enterprise that generates two-hundred-and-twenty million dollars

8    ($220,000,000) or more per year.

9    94. Defendant has failed to pay Plaintiffs just compensation of wages, benefits and

10    reimbursement for the labor expended and reviews they created.

11    95. As a result of the Defendant's failure and refusal to pay said commissions,

12    Defendant has been unjustly enriched.

13    96. As a direct and proximate result of Defendant's failure or refusal to pay said

14    Commissions, Plaintiffs have sustained damages, to be proven.

15    97. Equity and justice require Defendant to pay the Plaintiffs just compensation of

16    wages, benefits and reimbursement for the labor expended and reviews they

17    created.

18    98. Plaintiffs are without a remedy absent this Court's intervention.

19                    **THIRD CAUSE OF ACTION**

20                   **ON BEHALF OF NAMED PLAINTIFFS,**

**COLLECTIVE-ACTION COMPLAINT FOR WAGES**
**Jeung et al. vs. Yelp, Inc.**                         27

1        **AND ALL OTHER PERSONS SIMILARLY SITUATED**

2        **PURSUANT TO *UNJUST ENRICHMENT***

3    99. Plaintiffs incorporate by reference the allegations of each and every paragraph

4    numbers 1-84 inclusive as though fully set forth herein.

5    100.    Defendant, has been, and continues to be, unjustly enriched by the non-

6       wage-paid labors provided by these plaintiffs and all those similarly situated.

7       Unjust enrichment is based upon society's interest in preventing the injustice of

8       a person's retaining a benefit for which no lawful payment has been made to the

9       provider.

10   101.    By refusing to pay Plaintiffs wages for labor expended and hours worked,

11      Defendant as unjustly enriched at the expense of and to the detriment of all

12      Plaintiffs.

13   102.    Defendant's retention of any benefit collected directly and indirectly

14      violates principles of justice, equity, and good conscience when they refuse to

15      pay Plaintiffs' wages. As a result, Defendant has been unjustly enriched.

16   103.    Plaintiffs are entitled to recover their fair compensation, and Defendant

17      should be required to disgorge to Plaintiffs the benefit they have unjustly

18      obtained.

19                          **X.**

20                  **PRAYER FOR RELIEF**

**COLLECTIVE-ACTION COMPLAINT FOR WAGES**
**Jeung et al. vs. Yelp, Inc.**                                        28

1  **WHEREFORE, Plaintiffs, on their own behalf and on behalf of all other**

2  **similarly situated persons, seek the following relief:**

3  1. Unpaid wages;

4  2. reimbursement of expenditures; and

5  3. liquidated and statutory damages as permitted by law;

6  4. Notice to be issued by the Court to all similarly situated persons;

7  5. That other similarly situated, past or present writers and reviewers of Defendant

8  be given the opportunity to join in this lawsuit as party-plaintiffs by filing

9  written consents under the FLSA;

10  6. Pre-judgment and post-judgment interest;

11  7. Reasonable attorneys fees and costs of the action; and

12  8. Such other relief as this Court shall deems just and proper.

13  DATED: July 25, 2014

14

15  Daniel A. Bernath,
16  **Attorney for Plaintiffs and the proposed collective**